**MUR–MAID ENTERPRISES, INC.,
Plaintiff, Counter–Defendant,**

**Elmer Murray and Joy G. Murray,
Plaintiffs–Appellants,**

v.

**John Timothy TOWNSEND and Star Paper Tube, Inc., Defendants–Appellees,
Counter–Claimants.**

No. 90–8096.

United States Court of Appeals,
Eleventh Circuit.

Aug. 23, 1991.

Clifton M. Patty, Jr., Ringgold, Ga., Joseph E. Willard, Jr., Rossville, Ga., for plaintiffs-appellants.

L. Hugh Kemp, Dalton, Ga., for defendants-appellees, counter-claimants.

Before KRAVITCH and EDMONDSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA, PURSUANT TO ARTICLE VI, SECTION VI, PARAGRAPH IV OF THE GEORGIA CONSTITUTION

TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES OF THAT COURT:

This is a Georgia tort case with diversity jurisdiction.

Plaintiff Joy Murray is a corporate vice-president, stockholder and employee of a small family corporation. While she was a passenger in a company vehicle and on company business, the vehicle, driven by a co-employee, collided with a third party vehicle. Mrs. Murray was injured, and she sued the owner and the driver of the other vehicle in negligence. Her husband Elmer Murray sued for loss of consortium. The corporation sued for damage to its vehicle. Ronnie Godfrey, the driver, sued for his injuries. The defendants counterclaimed, also alleging negligence. The jury returned a verdict for defendants on all the plaintiffs' claims and against the defendants on the counterclaims.

We are presented with issues concerning imputation of negligence of Godfrey, the employee-driver, to plaintiff Joy Murray as contributory negligence on her part. The corporation and Godfrey have not appealed. The husband's appeal turns on determination of the wife's appeal.

There appear to be no clear, controlling precedents in the decisions of the Supreme Court of Georgia that are dispositive of this case, so we certify questions of law for instructions.

FACTS

The Murrays and their son own all the stock of Mur–Maid Enterprises, Inc., a small corporation that manufactures mattresses. Mr. Murray is the company president and Mrs. Murray is vice-president. She was injured while riding in a company truck driven by the company's delivery driver, Godfrey, when it collided with a truck owned by Star Paper Tube and driven by defendant Townsend.

A central issue during the trial was whether any negligence of which Godfrey might have been guilty could be imputed to any one or all of plaintiffs. Mrs. Murray testified that her duties consisted of manual labor in the mattress plant in the manufacturing process, sweeping plant floors, two to three hours per week of bookkeeping, and she called on customers as well. She was not paid a wage but simply took money out of the company when she and her husband needed it. The trip that culminated in the accident was being made by Godfrey to deliver mattresses to a new customer. Mrs. Murray went along on the trip to pay a sales and public relations call on the new customer whom she had not met, to meet the new customer and show a new line and maybe sell something to the

customer. Mrs. Murray denied exercising any actual control over the way in which Godfrey drove (RE 69). En route she told Godfrey to pull over and stop at a drive-in so that she could get a soft drink. Pressed about this occurrence, she stated that she asked Godfrey to stop, that she could not "by herself" direct him to stop but said that if she asked him if he would stop to get her a soft drink and he refused she "could have made him do it ... or fired him if she wished to" (RE 66).

Godfrey testified that Mrs. Murray was his boss and had the right to control his actions on the job while he was working. To a question of whether she was his supervisor, he responded: "Yes, she was the boss, owner, yes sir."

The district court instructed the jury that Godfrey was an employee and working within the scope of his employment, so that if he was negligent his negligence was chargeable to the corporation. The correctness of this instruction is not questioned.

With respect to Mrs. Murray, the court charged:

Now, you have another features in this case. The evidence shows that Mrs. Murray was riding with Mr. Godfrey. She is vice president of the corporation. She is in a position that she, plainly speaking, is his boss and she has a right to control what he does. It doesn't mean that she has to control. It simply means she has a right to control what he did because of the relationship between the two, what the law calls privy [sic] between them.

So that means if Mr. Godfrey was negligent at this time and place then that's imputed to her or chargeable to her. She is just as responsible as he would be for any negligence. That's what we mean by imputed negligence in this case.

(RE 72.)

Georgia is a comparative negligence state. The court gave additional instructions explaining that if Godfrey's negligence exceeded negligence of defendants the plaintiffs could not recover, and if Godfrey's negligence were less than negligence

of defendants plaintiffs' damages would be reduced accordingly.

The Murrays objected to the instruction on imputation of Godfrey's negligence to them, as follows:

We believe that the correct statement of law is that at best that is a jury question as to whether or not she was directing him at that time; that the negligence is not imputable as a matter of law and that was in effect a directed verdict on the issue of imputed negligence.

(RE 77.)

The court responded:

For all intents and purposes of the record, I think you can say to imputed negligence between Mr. Godfrey and Mrs. Murray I did direct a verdict.

(RE 77.)

Thus the issue comes down to the correctness of the instruction—or as the court saw it, its directed verdict—concerning imputation of Godfrey's negligence to Mrs. Murray.

There is no evidence that Mrs. Murray in her individual capacity was Godfrey's principal or that Godfrey was the agent of Mrs. Murray individually, and the district court's instruction is consistent with that state of the evidence. The basis for the court's instruction was Mrs. Murray's status as vice-president of the corporation ("his [Godfrey's] boss") which gave her a right to control what he did. This relationship the court described as privity between them.

Mrs. Murray asserts that because Mur-Maid was the principal and she and Godfrey were merely agents of the corporation, the driver's negligence may be imputed solely to the corporation and not to her. This presents us with interpretation of O.C.G.A. § 51–2–1, which provides:

For the negligence of one person to be properly imputable to another, the one to whom it is imputed must stand in such a relation or privity to the negligent person as to create the relation of principal and agent.

We then face this question: If a corporate vice-president, by reason of her position with a small family corporation, has power

of control over a corporate employee driving a company vehicle in which she is a passenger on company business, are they, within the meaning of § 51–2–1, in such "relation or privity" that the relation of "principal and agent" is created between them (she as principal and he as agent), with a consequence that the driver's negligence is imputed to her as her contributory negligence?

The instruction given by the court is predicated upon Mrs. Murray's right to control, which the court drew from her status as vice-president. This presents us with a second question: Does a corporate vice-president of a small family corporation, as a matter of law, solely by reason of her position as vice-president, have the right to control a driver-employee in the operation of a company vehicle in which she is a passenger on company business or is right to control an issue of fact to be decided by the jury based upon all the circumstances? Mrs. Murray contends that her actual duties—manual labor, bookkeeping, calls on customers—are the duties of a co-employee, that as co-employee she was accompanying Godfrey on a mission separate from his, and that these duties did not put her in a supervisory position to exercise control over Godfrey; that is, she says, the power implied solely from her status as vice-president does not as a matter of law include the power to control operation of a company vehicle in which she is a passenger on company business, so that right to control is a jury issue. Moreover, as pointed out above, her testimony describing her perception of her ex officio power is not wholly consistent, and Godfrey's testimony with respect to her right to control differs from hers.

We therefore certify the following questions:

(1.) If a corporate vice-president, by reason of her position with a small family corporation, has power of control over a corporate employee driving a company vehicle in which she is a passenger on company business, are they, within the meaning of § 51–2–1, in such "relation or privity" that the relation of "principal and agent" is created between them (she as principal and he as agent), with a consequence that the driver's negligence is imputed to her as her contributory negligence?

(2.) Does a corporate vice-president of a small family corporation, as a matter of law, solely by reason of her position as vice-president, have the right to control a driver-employee in the operation of a company vehicle in which she is a passenger on company business or is right to control an issue of fact to be decided by the jury based upon all the circumstances?

Our statement of the questions is not designed to limit the inquiry of the Georgia Supreme Court. The particular phrasing used in the certified questions does not restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

The entire record in this case, together with copies of the briefs of the parties, is transmitted herewith for any assistance it might provide to the Court in answering the certified questions.